# AMARSINGH v. FRONTIER AIRLINES COMPLAINT

UNITED STATES DISTRICT COURT 212 N. WAHSATCH AVENUE COLORADO SPRINGS, CO, 80903

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
2:46 pm, Jul 24, 2023
**JEFFREY P. COLWELL, CLERK**

| | | |
|---|---|---|
| KUSMIN L. AMARSINGH | ) | |
| Plaintiff, Pro Se | ) | |
| | ) | CIVIL COMPLAINT |
| Vs | ) | CASE NUMBER: _____ |
| | ) | Filing Date: 24 July 2023 |
| FRONTIER AIRLINES | ) | |
| Defendants | | |

## JURISDICTION

This Court has jurisdiction over this case, and is therefore the appropriate venue, because Frontier Airlines is headquartered in the State of Colorado.

## LAW

1. Now comes Kusmin Linda Amarsingh, appearing Pro Se, and being an attorney licensed in the State of Maryland, against Frontier Airlines, Inc (hereafter Frontier). Frontier and its agents breached their contract with me by failing to provide fair and reasonable transport on an aircraft after I had substantially performed on said contract. Frontier also breached their covenant of good faith and fair dealing, and failed to fulfill reasonable expectations, arising out of Frontier's failure to refund my full ticket prices for unused tickets. Additionally, Frontier discriminated against me based on my race by racial profiling, in violation of:

<u>The Racial Discrimination Act of 1975:</u>

> (1) It is unlawful for a person to do any act involving a distinction, exclusion, restriction or preference based on race, colour, descent or national or ethnic origin which has the

Case No. 1:23-cv-01875-SBP   Document 1   filed 07/24/23   USDC Colorado   pg 2 of 11

AMARSINGH vs. FRONTIER AIRLINES    Page 2 of 10
COMPLAINT

purpose or effect of nullifying or impairing the recognition, enjoyment or exercise, on an equal footing, of any human right or fundamental freedom in the political, economic, social, cultural or any other field of public life.

§ 11  <u>Access to places and facilities</u>

It is unlawful for a person:

(a) to refuse to allow another person access to or use of any place or vehicle that members of the public are, or a section of the public is, entitled or allowed to enter or use, or to refuse to allow another person access to or use of any such place or vehicle except on less favourable terms or conditions than those upon or subject to which he or she would otherwise allow access to or use of that place or vehicle;

(b) to refuse to allow another person use of any facilities in any such place **or vehicle that are available to members of the public or to a section of the public,** or to refuse to allow another person use of any such facilities except on less favourable terms or conditions than those upon or subject to which he or she would otherwise allow use of those facilities; or

(c) **to require another person to leave or cease to use any such place or vehicle or any such facilities; by reason of the race, colour or national or ethnic origin of that other person** or of any relative or associate of that other person.

<u>Section 42 U.S.C. § 1981 of Airline Deregulation Act</u>:

…which prohibits any air carrier from subjecting persons in air transportation to discrimination on basis of race, color, national origin, sex, or ancestry they were wrongfully removed from their flight on basis of their perceived religion, race, color, and national origin**,** since statute focused directly on entity regulated**,** rather than on individual protected. *See Oliver v. Joint Logistics Managers, Inc.,* 893 F.3d 408, 411

(7th Cir. 2018) ("Section 1981 of the Civil Rights Act of 1866 'protects the right of all persons to make and enforce contracts regardless of *race*,'" *Carter* v. *Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015) (quoting in part 42 U.S.C. § 1981(a)) (emphasis added)).

**FACTS**

1. On 13 June 2023 I arrived at the Philadelphia Airport to catch my flight from Philadelphia, connecting through Orlando, FL, and to my final destination, St. Louis, Missouri on Flight 1171 and 1211. I had traveled to Philadelphia to attend a funeral of a close family friend, and loved one. My fight to St. Louis was to reunite with my minor daughter who was missing me tremendously, my husband, and, my recently born Grandson, Jonah who I had yet to meet.

2. I checked into my flight online and had no bags other than a small backpack that fits comfortably under my seat. I arrived at Gate 6A well before the flight departure time, and waited to start the boarding process. As the time drew near to boarding, the Frontier Agents on duty, of which there were three, announced that the flight was overbooked by approximately 10 passengers. The lead agent, Mr. Tyron or Tyrone, announced that volunteers will be given a refund of their flight**,** a new flight. Subsequently the agent then announced that they would compensate volunteers $800.00 in addition to the flight refund and rebooking. Once again, there were no volunteers.

3. Subsequently, the boarding process started by zone number which is common practice. I approached the agent when my zone was called and provided my ID Card and Boarding Pass. I had not yet been assigned a seat, and my boarding pass stated "Seat: TBD (To Be Determined)". The agent then directed me to the back of the line because they were boarding passengers with assigned seats only. I requested a seat assignment and again was told I needed to wait until after the boarding process.

Case No. 1:23-cv-01875-SBP   Document 1   filed 07/24/23   USDC Colorado   pg 4 of 11

AMARSINGH vs. FRONTIER AIRLINES                                                          Page 4 of 10
COMPLAINT

4. There was a cluster of people and no real line, so I inquired from a group of passengers whether they were also waiting for a seat assignment. They responded in the affirmative. We started talking about our travel plans, and the African American family of about 8 to 10 people were traveling to Orlando as their final destination. Most of the party did not have assigned seating and we shared our frustrations with each other. The passengers were or appeared to be African American passengers, based their physical characteristics. Similarly, the Frontier agents on duty were or appeared to be African American, based once again on my observation.

5. Among the people waiting for seat assignments were approximately six passengers, who either were or appeared to be Hispanic, one male passenger, who was or appeared to be White, and a gentleman who was or appeared to part of African American. Additionally, there was an apparent Asian woman traveling with a child, accompanied by a white female.

6. After all passengers with seat assignments boarded, the Frontier agent asked the party of three, with the child passenger, if one of the adults would give up their seat. The child and the adult Asian female passenger were given seats and allowed to board. Next, the lead Frontier Agent, Tyron(e) came out from behind the Frontier Counter and approached the party of 8-10 African American passengers and ushered them on board. One of the young women I was speaking to looked at me in a knowing manner as she boarded because we conversed on our travel plans, and, the possibility we may not make the flight. Additionally, she was in close enough proximity to hear the Frontier agents yell at me and their treatment of me, and the other passengers who were asked to remain seated. Like me, her group did not have a seat assignment. The Courts have recognized that racial profiling is a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

7. Once all the African American passengers were boarded, the agents resumed their position behind the Frontier counter. I once again approached the agents to inquire about my seat assignment, and hoped to explain and impress upon the agents that my flight was a connecting flight, and that there were no other alternative / feasible flights for my schedule for at least a

Case No. 1:23-cv-01875-SBP   Document 1   filed 07/24/23   USDC Colorado   pg 5 of 11

AMARSINGH vs. FRONTIER AIRLINES                                          Page 5 of 10
COMPLAINT

week. Rather than permit me to speak, one of the agents, a young African American female, with long blonde braids, kept interrupting me saying 'have a seat' 'have a seat' and kept saying about 25 more times.  She spoke at me in a loud voice as she stared right at me in a rude and very unprofessional manner.  I continued to speak in between her chants, so she changed her tune to 'I can hear you' 'I can hear you' she parroted them for some time without allowing me to get a word in.

8.  Of the passengers left without seats, none were African American, except the possible mixed-race gentleman I mentioned previously. The lead agent called that individual to the front of the line, and provided him alone with some information which I could not hear.  I did not have a phone with me, and before leaving I asked the young man to use his phone to call a taxi, and he kindly obliged.  After a few minutes the gentleman left the gate and went on his way. The rest of the passengers, approximately 5 Hispanic / Spanish Speaking passengers, two of Indian descent, myself being one, and one white male were told to have a seat and wait our turn.

9.  At no time did the Agents inform us of the status of the flight, and the monitor continued to say 'Delayed'. In fact the plane had already departed, but as the passengers were unaware of this we were under the impression that they would call us soon for seats.

10.  30 minutes after the flight departed, the Agents finally updated the to 'Departed'. There was a moment of quiet desperation and then everyone stated making their way towards the Frontier counter.  A number of the passengers could not speak English, but they were clearly asking for updates and for assistance on getting to their respective destination.  The Agents became irate and told everyone to sit down in a very loud voice.  The Indian female passenger asked me if I knew what was going on. I told her I did not and so she approached the counter to speak with the lead agent. I was standing within arm's length of her and the lead agent began yelling at her in what sounded like a mocking Indian accent and while pointing to each passenger in front of him asked her 'do you think you are more important than her, him, her.....etc'.

Case No. 1:23-cv-01875-SBP   Document 1   filed 07/24/23   USDC Colorado   pg 6 of 11

AMARSINGH vs. FRONTIER AIRLINES                                          Page 6 of 10
COMPLAINT

11. The young woman was clearly distraught and told the agent she was traveling on an international flight with a connecting flight to Orlando then onto St. Louis. She was soft spoken and the lead agent kept on speaking in a raised and very unprofessional manner. Like me, her request was met with more instructions to 'sit down' again in a commanding and extremely disrespectful manner'.

12. Among the left passengers, one male Hispanic passenger, who spoke limited English asked what he was supposed to do. The agent gave him a meal voucher and told him to return the following day and they would try to get him on a flight. He became irate and said, that is what you told me yesterday. He inquired whether tomorrow's flight was similarly overbooked, and the agents looked up the flight, and told him yes it was. He then told the agent he wanted a refund and that he would not come back the following day because the same thing would likely happen, for the third time.

13. Sometime later, the lead agent asked everyone for their name, email, and, phone number so that he can process refunds and compensation. He stated that we would all receive $400.00 plus the cost of our ticket. The two female attendants were supposed to process this for each passenger, but when I went to them they only offered to refund my flight or rebook my flight.

14. I attempted to inform the remaining agents was the lead agent said, and asked that they could kindly get clarification from him. They refused to listen and instead insisted that they already heard what he said and that I could only elect to receive a refund OR a new flight. One female agent was handing out a card with the link to Frontier's refund, with no other information or saying anything to anyone. She was very nonchalant and appeared to be bored.

15. I again asked the lead agent to clarify for the benefit of everyone, particularly because it was very apparent that the other passengers, with the exception of the white male and myself, had little command of English. The lead Frontier Agent then mumbled softly to the point I had to tilt my head into his personal space to hear him and he reiterated that we should receive

Case No. 1:23-cv-01875-SBP   Document 1   filed 07/24/23   USDC Colorado   pg 7 of 11

AMARSINGH vs. FRONTIER AIRLINES                                          Page 7 of 10
COMPLAINT

compensation AND a refund of our flight, because as he stated 'we were inconvenienced', along with a rebooked flight.

16. Shortly after the Lead Agent left the counter and walked away. There were three agents left at the counter. One male, a Mr. Rivera, and, two females including the young woman with the long blonde braids. I took a seat along with the other passengers and waited for approximately an hour.

17. I returned to the Counter and asked the remaining agents whether the Mr. Tyrone, the lead agent, was going to return with a check or money disbursement, and whether I am required to still wait at the gate. They advised me that he was not going to return and that I will receive an email with my refund information.

18. I therefore left the gate area and exited the Airport. I observed that there was only one passenger left waiting at the gate, the other young woman of Indian descent. She asked me to stay with her and appeared to still be distraught because of the male agent's treatment of her earlier on. Unfortunately, I could not because I did not have a phone and needed to wait outside for my ride back to my hotel.

19. The following day, I booked a flight with American Airlines taking me to Destin Florida, my home. I had no choice because there were no flights to St. Louis for at least another week with Frontier Airlines. As a result, I incurred costs associated with returning home rather than visiting St. Louis. Additionally, I had no choice but to cancel my flight from St. Louis was for my daughter and me. In total I lost approximately $1000.00 in flights, but more importantly lost the opportunity to attend my grandson's birth announcement and family reunion in his honor.

20. Subsequent to this incident, I filed two complaints with Frontier Airlines both of which were met with disregard and insistence that I was already refunded my flight. This is wholly untrue as I have not accepted nor received any money or compensation of any kind from Frontier Airlines.

Case No. 1:23-cv-01875-SBP   Document 1   filed 07/24/23   USDC Colorado   pg 8 of 11

AMARSINGH vs. FRONTIER AIRLINES　　　　　　　　　　　　　　　　　　　　Page 8 of 10
COMPLAINT

I have also filed a complaint with the Department of Transportation as that body is tasked with regulating instances of racial discrimination by Airlines.

### ARGUMENT

*I have a dream that one day this nation will rise up and live out the true meaning of its creed: 'we hold these truths to be self-evident – that all men are created equal'.*

*Martin Luther King Jr. – "I have a dream" speech, 1963*

1. Frontier Airlines, by its Agents, under a theory of Agency Liability, did racially discriminate against me based on my race through racial profiling. Under a theory of Agency Liability, a complaint must demonstrate that the Agents had authority to act on behalf of the Principal. In the instant case, the Frontier Agents wore Frontier uniforms, and stood at the Frontier counter. They were in charge of boarding the plane, and had authority to select which passengers to board based on non-discriminatory characteristics. Additionally, the Lead Agent in particular had actual authority to determine value of refund to each passenger / customer. Federal Rule of Civil Procedure 50(b).

2. My flight ticket was a contract with Frontier Airlines that they would transport me from Philadelphia to St. Louis, Missouri on the date and time of my airline ticket, or within the period of my checking in. By checking into my flight, I substantially performed on the contract. Although I did not contract for a specific seat, neither did many other passengers, and, I was still entitled to a seat and transport to my final destination unless I elected for a refund of my ticket which I did not.

3. Frontier Airlines racially discriminated against me when it's Agents racially profiled passengers and excluded me because I was not or appeared to be African American. I am clearly of Indian descent, and, my name on the passenger log, last name 'Amarsingh' is also telling as to my descent. The Frontier agents had the passenger log in front of them during the boarding

Case No. 1:23-cv-01875-SBP   Document 1   filed 07/24/23   USDC Colorado   pg 9 of 11

AMARSINGH vs. FRONTIER AIRLINES                                              Page 9 of 10
COMPLAINT

process. In fact, at one point, the lead agent called out my last name and the last name of the other Indian passenger who's appearance, Indian accent, and, her last name was also clearly of Indian descent, Chaudry or similar. He called our names and we both walked to the front desk. He wrote something on the passenger log and asked us to take a seat. Frontier Airline agents degraded me and deliberately humiliated me by yelling at me in a crowded airport because I was not African American. Absolutely no one deserves to be treated in this manner, especially on the basis of race.

4. Frontier Airlines is under an obligation to provide airline transportation based on a rule of contract such that perform due diligence and make reasonable accommodations to provide transportation from point A, to point B. Frontier Airlines disregarded the needs of its customers and based their decision on which passengers to assign seats based on race and preferential treatment based on race. As discussed in Facts above, there was another Frontier flight leaving Philadelphia into Orlando scheduled to depart a mere hour later. It therefore stands to reason that passengers with connecting flights, or in the instance of the one Hispanic male who had already been inconvenienced the day before, to take priority in seat assignments. I am a United States Citizen, a United States Army JAG Attorney, and a proud veteran. None of this should matter when traveling. The blatant disrespect, mistreatment, and disregard towards the non-African American passengers is a clear violation of the Civil Rights Act, and Airline Regulations.

## ADMINISTRATIVE ACTION – PRIOR TO FILING

1. On or about 15 June 2023, after arriving at my home and having access to my phone and computer, I contacted Frontier Airlines via their online chat service, and by email. I do not have a copy of the chat, however, I have attached a copy of the email exchange between me and Frontier. Frontier insisted that I received compensation at the Airport, which is wholly untrue. I intend on requesting the chats with Frontier during discovery.

Case No. 1:23-cv-01875-SBP   Document 1   filed 07/24/23   USDC Colorado   pg 10 of 11

AMARSINGH vs. FRONTIER AIRLINES
COMPLAINT
Page 10 of 10

2. On the same day, I completed the online complaint form on the Department of Transportation website stating the facts as presented here, and requested their assistance. I do not have a copy of this document; however, I will request it in discovery.

## RELIEF

1. In addition to the discovery stated above, I intend on requesting the release of the names and contact information of all passengers left behind on flight 1171 Philadelphia to Orlando, on 13 June 2023. A.

2. I request compensation in the amount of $15 dollars should I be granted summary judgement. Should this case go to trial, I request $100 million dollars for fees, expenses, and, emotional distress caused by Frontier Airlines and its agents.

3. I request discovery in this case, of all complaints filed against Frontier Airlines on the basis of race, or, any other discriminatory practice in violation of the laws cited above. I also request discovery into the facts and circumstances of all passengers left behind on the flight, their contact information, their names, and, addresses.

4. I request a jury in this case.

5. The facts presented here are irrefutable and discovery by Frontier of the passenger log, their tickets, in relation to the passengers left behind, will demonstrate in no uncertain terms that this case warrants summary judgement for the Plaintiff. The relief sought here is reasonable for the harm caused, and, to send a clear message to Frontier and all airlines that they must ensure equal treatment of all passengers.

6. As the facts are clear on its face, I request summary judgment.

Case No. 1:23-cv-01875-SBP   Document 1   filed 07/24/23   USDC Colorado   pg 11 of 11

AMARSINGH vs. FRONTIER AIRLINES COMPLAINT                                                              Page 11 of 10

*Kusmin L. Amarsingh*

KUSMIN L. AMARSINGH

Plaintiff, Attorney At Law

Pro Se

## AFFIDAVIT & CERTIFICATE OF SERVICE

I, Kusmin Linda Amarsingh, Esquire, appearing Pro Se, do certify that the above complaint is true in fact and law.  On 24 July 2023, I served a copy of this on Frontier Airlines at their headquarters at c/o Legal Department, 4545 Airport Way, Denver, Colorado 80239 via certified mail return receipt requested and emailed copies to Trista Miller, Director of Customer Care at Trista.Miller@flyfrontier.com and to Daniel Shurz, Senior Vice President at daniel.shurz@flyfrontier.com on 26 June 2023.

*Kusmin L. Amarsingh*

KUSMIN L. AMARSINGH

Plaintiff , Attorney At Law

Pro Se