IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:23-cv-01875-GPG-KAS

KUSMIN L. AMARSINGH

    Plaintiff,                                      Hon. Gordon P. Gallagher

v.

FRONTIER AIRLINES, INC.,

    Defendant.

**DEFENDANT FRONTIER AIRLINES, INC.'S
MOTION TO DISMISS WITH PREJUDICE**

Defendant, Frontier Airlines, Inc., by its undersigned counsel, brings the instant Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), and in support thereof states as follows:

## I.   INTRODUCTION

Plaintiff Kusmin L. Amarsingh filed an Amended Complaint ("Complaint") alleging that Frontier Airlines, Inc. ("Frontier") improperly denied her a seat on an overbooked flight. She attempts to state claims for breach of contract and racial discrimination but fails to plead sufficient facts to support either cause of action. Moreover, because the allegations demonstrate that she cannot plead viable claims under any circumstances, the Court should dismiss her Complaint with prejudice.

## II.   BACKGROUND

Plaintiff's first claim is for breach of contract for "failing to provide fair and reasonable transport on an aircraft after [she] had substantially performed on said contract." Dkt. 14 at 3. Plaintiff's second claim is that Frontier "discriminated against [her] based on [her] race by racial

profiling," thus violating the Racial Discrimination Act of 1975[1] and 42 U.S.C. § 1981. Plaintiff demands "compensation in the amount of $15 million dollars" if she prevails on summary judgment. Should the case go to trial, Plaintiff requests "$100 million dollars for fees, expenses, and, emotional distress." *Id*. at 10.

In support of her claims, Plaintiff alleges the following:

On June 13, 2023, Plaintiff arrived at the "Philadelphia Airport" to catch a Frontier flight to St. Louis, Missouri, with a connecting flight through Orlando, Florida. Dkt. 14 at 4. After Plaintiff arrived at her gate, she learned that "the flight was overbooked by approximately 10 passengers." *Id.* A Frontier agent offered volunteers "$800.00 in addition to the flight refund and rebooking," but no passengers, including Plaintiff, accepted the offer. *Id.*

Plaintiff did not pay for a seat assignment, and, therefore, she waited with the others who also did not have seat assignments, which included a family of approximately 8-10 African American people, "most" of whom "did not have assigned seating." *Id*. at 5.

> Among the people waiting for seat assignments were approximately six passengers, who either were or appeared to be Hispanic, one male passenger, who was or appeared to be White, and a gentleman who was or appeared to part of African American. Additionally, there was an apparent Asian woman traveling with a child, accompanied by a white female. *Id.*

After all passengers with seat assignments boarded the plane, the Asian woman traveling with a child was allowed to board. *Id.* Next, the family of approximately 8-10 African Americans ("most" of whom did not have assigned seats) was allowed to board. *Id.* The flight then departed without the remaining people who had no seat assignments. *Id.* at 6-7. Plaintiff claims that no African American people were denied boarding, "except the possible mixed-race gentleman [she]

---

[1] Note that the Racial Discrimination Act of 1975 is an *Australian* law. Act No. 52 of 1975, Racial Discrimination Act 1975 [Australia], 11 June 1975.

2

mentioned previously." *Id.* at 6. She further claims that those who did not board consisted of "approximately 5 Hispanic / Spanish Speaking [*sic*] passengers, two of Indian descent, [her]self being one, and one white male." *Id.* at 6. According to Plaintiff, there were "no other alternative/feasible flights for my schedule for at least a week." *Id.*

A Frontier agent stated that the passengers who were denied boarding "would all receive $400.00 plus the cost of our ticket." *Id.* at 7. However, the agents in charge of dispensing compensation told Plaintiff she "could only elect to receive a refund OR a new flight." *Id.* She complained that the passengers who were denied boarding were told they would receive "compensation AND a refund of our flight" due to being "inconvenienced." *Id.* at 8. An agent then passed out cards with links to Frontier's refund processing website. *Id*. at 7.

After being advised that she would receive an email with her refund information, Plaintiff left the airport. *Id.* She states, however, that she elected not to receive a refund of her ticket. *Id.* at 9. She then booked a flight with American Airlines to her hometown of Destin, Florida the next day. *Id.* Plaintiff subsequently complained to Frontier and was told her flight was already refunded. She claims, "I have not accepted nor received any money or compensation of any kind from Frontier Airlines." *Id*.

### III.  LEGAL STANDARD

A defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss then, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007). "Nor does the complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Hakeem v. Denver Pub. Sch.*, Civil Action No. 20-cv-00083-PAB-KLM, 2020 U.S. Dist. LEXIS 133184, at *8 (D. Colo. July 7, 2020) (internal citations omitted). The federal pleading standard demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Twombly*, 550 U.S. at 555. The factual allegations must go beyond the sheer possibility that a defendant has acted unlawfully. *Id.* at 557.

## IV.    ARGUMENT

A *pro se* plaintiff's pleadings are sometimes construed generously and with leniency. *See Griffin v. Hickenlooper*, Civil Action No. 11-cv-03380-REB-BNB, 2013 U.S. Dist. LEXIS 36874, at *1 (D. Colo. Mar. 18, 2013). However, no such leniency is warranted here, as Plaintiff alleges she is "a United States Army [Judge Advocate General] Attorney." Dkt. 14 at 9. With this in mind, it should be apparent to Plaintiff that both of her claims fail as a matter of law.

### A.    Plaintiff cannot state a viable claim for breach of contract.

A party claiming breach of contract must plead and prove: (1) the existence of a contract; (2) performance by the plaintiff or justification for nonperformance; (3) failure to perform by the defendant; and (4) resulting damages. *Lodge at Mt. Vill. Owner Ass'n, Inc. v. Eighteen Certain Underwriters of Lloyd's of London*, 591 F. Supp. 3d 1008, 1014 (D. Colo. 2022). Not only does Plaintiff fail to allege these basic elements, the terms of the applicable contract defeat her claim.

The contract at issue is Frontier's Contract of Carriage ("Contract"), a copy of which is attached as **Exhibit A**. *See Cocona, Inc. v. Singtex Industrial Co.*, No. 14-cv-01593-MJW, 2014 U.S. Dist. LEXIS 144184, at *2-3 (D. Colo. Oct. 9, 2014) (noting that if a document is central to the plaintiff's claim, the defendant can properly submit an indisputably authentic copy to be considered on a motion to dismiss). The Contract applies "to all tickets issued for travel on flights

4

operated by or for Frontier… whether such ticket was sold by Frontier or its authorized agents or whether such ticket is used." Ex. A, Section 1.

Plaintiff incorrectly asserts that her ticket "was a contract with Frontier Airlines that they would transport [her] from Philadelphia to St. Louis, Missouri on the date and time of [her] airline ticket, or within the period of my checking in." Dkt. 14 at 9. In fact, Plaintiff's allegations establish that she was a "Standby Passenger" and was able to board the flight "subject to availability of seat space at departure time and only after all passengers having confirmed reservations for the flight have been boarded." Ex. A, p. 2. Moreover, the Contract expressly states: "Frontier will use reasonable efforts to transport passengers and baggage to the purchased destination, but published schedules, flight times, aircraft types, seat assignments, and similar details set forth in the ticket or Frontier's published schedules ***are not guaranteed and form no part of this Contract of Carriage***." Ex. A, Section 17, p. 20 (emphasis added).

Section 18 of the Contract governs the terms of "Denied Boarding Compensation." Section 18(D) states that a passenger who is denied boarding "will be transported on Frontier's next available flight on which space is available and at no additional charge." *Id.* Plaintiff claims Frontier "did not have an available connecting or other flight that would accommodate my travel plans for at least a week." Dkt. 14 at 3. She further claims there were "no other alternative/feasible flights for my schedule for at least a week." *Id.* at 6. Plaintiff, therefore, cancelled her flight and booked a ticket the next day with American Airlines. *Id.* at 8.

Contrary to Plaintiffs' claims, nothing in the Contract guaranteed that Frontier would "accommodate her travel plans" to fit her particular "schedule" on June 13, 2023. Rather, Plaintiff was entitled to transport on the next available flight on which space was available. While it seems unlikely that no such flights were available for an entire week, Plaintiff fails to explain how such

5

an accommodation would violate Section 18(D) of the Contract. Thus, it is apparent that Frontier performed its obligations under the Contract and Plaintiff chose to fly with a different airline for her own specific scheduling reasons.

Moreover, Section 18(C) of the Contract provides the terms for financially compensating a passenger who is involuntarily denied boarding, and Plaintiff fails to allege that Frontier violated this condition. She alleges that, at different times, Frontier agents offered her $800 (*id.* at 4) and $400 (*id.* at 7) in addition to refunding the cost of her ticket, but that she never "elected for a refund of [her] ticket." *Id.* at 9. That Plaintiff chose not to accept Frontier's offers undermines any argument that Frontier failed to perform a contractual obligation which resulted in her sustaining damages. For all of these reasons, Frontier asks that the Court dismiss Plaintiff's breach of contract claim with prejudice.

**B.    Plaintiff's racial discrimination claim fails as a matter of law.**

    **1.    Plaintiff cannot state a claim for discrimination under 42 U.S.C. §1981 as Frontier's actions did not interfere with contractual rights.**

To establish a *prima facie* case of discrimination under §1981 in a non-employment context, a plaintiff must show: (1) that she is a member of a protected class; (2) that defendant had the intent to discriminate on the basis of her race; and (3) that the discrimination interfered with a protected activity as defined in §1981. See *Reynolds v. School Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1532 (10th Cir. 1995). The protected activities defined in § 1981 include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The Tenth Circuit requires a plaintiff to identify "the actual loss of a contract," or interference with a protected activity under such contract, to state a § 1981 claim. *Shawl v. Dillard's Inc.,* 17 F. App'x

6

908, 911-12 (10th Cir. 2001) (holding that despite the rude conduct of the salesperson, the plaintiff could not show an "actual contract loss" caused by the allegedly discriminatory behavior).

As discussed above, Frontier did not breach the Contract at issue in this case. It follows that Plaintiff cannot identify an actual loss of a contract or interference with a protected activity under such contract. For this reason alone, the Court should dismiss Plaintiffs' claim for racial discrimination under 42 U.S.C. § 1981.

### 2. Plaintiff cannot plausibly state a claim under 42 U.S.C. §1981.

A successful claim under 42 U.S.C. § 1981 requires showing "purposeful" and intentional discrimination on the basis of race. *General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982). Here, in addition to the reasons stated above, Plaintiff's claim for racial discrimination fails because she cannot show that Frontier intentionally discriminated against her based on her race, and that the alleged discrimination was the "but-for" cause of the alleged interference with a protected activity. *See Comcast Corp. v. National Association of African American-Owned Media*, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d 356 (2020).

Plaintiff claims that "most" of the group of approximately 8-10 African American people did not have assigned seating. Dkt 14 at 5. "Among the people waiting for seat assignments were approximately six passengers, who either were or appeared to be Hispanic, one male passenger, who was or appeared to be White, and a gentleman who was or appeared to part of African American. Additionally, there was an apparent Asian woman traveling with a child, accompanied by a white female." (Emphasis added) *Id.* Plaintiff also asserts that another "woman of Indian descent" was denied boarding. *Id.* at 8.

According to Plaintiff, the group of approximately 8-10 African American people was allowed to board the aircraft, along with the "apparent Asian woman travelling with a child." *Id.*

7

at 5. The only reasonable inference to be drawn from these allegations is that the African American family was allowed to board because some of them had purchased tickets with assigned seats, and the rest of the family was accommodated so the family could travel together. This left only two more seats available, which were given to the Asian woman travelling with a child.

Viewing Plaintiff's allegations in the light most favorable to her, she was denied boarding along with 10 other people, consisting of: 6 Hispanic individuals, 2 Caucasian individuals, 1 African American gentleman, and 1 other woman of Indian descent. Plaintiff's complaint is essentially that she was not given preferential treatment over all the other passengers with diverse racial backgrounds, including the family of 8-10 African American people – not that she was denied boarding because of her Indian descent. In other words, she claims that she should have been given a seat assignment at the expense of someone who had already boarded. Moreover, it cannot be overlooked that § 1981 affords all persons the same rights to make and enforce contracts as are "enjoyed by white citizens." 42 USC § 1981(a). The fact that at least two white people were also denied boarding forecloses Plaintiff from recovering under § 1981 in the first instance.

Most critically, however, is the fact that Plaintiff has alleged race-neutral reasons for not receiving a seat assignment: (1) she elected <u>not</u> to pay to receive a seat assignment at the time she booked her flight (or anytime thereafter), and (2) the flight was overbooked by ten (10) people. This is fatal to her Section 1981 claim. See *Mohsen Sharifi Takieh v. Banner Health*, 515 F. Supp. 3d 1026, 1035 (D. Ariz. 2021) (applying the but-for causation test, courts have ruled that a §1981 claim is rendered implausible if the complaint identifies an "independent, non-discriminatory reason" for the alleged contractual impairment); *Astre v. McQuaid*, 804 F. App'x 665, 667 (9th Cir. 2020) (same) (quoting *FCS Advisors, LLC v. Missouri*, 929 F.3d 618, 622 (8th Cir. 2019)).

8

In *Astre*, a plaintiff bringing claims under §1981 expressly alleged that she resigned from her job after her employer lost funding due to a lack of community support. *Id.* at 666-67; see *Astre v. McQuaid*, No. 3:18-CV-00138-WHO, 2018 U.S. Dist. LEXIS 184189, 2018 WL 5617226, at *3 (N.D. Cal. Oct. 26, 2018). Considering that race-neutral explanation, the Ninth Circuit determined that the plaintiff's other allegations did "not give rise to a plausible inference that [a defendant's] alleged racially discriminatory actions caused [an] alleged impairment to [the plaintiff's] contractual relationship." *Astre*, 804 F. App'x at 667. The Ninth Circuit thereby concluded that the plaintiff's § 1981 claims were implausible and affirmed the lower court's dismissal of the claims with prejudice. *Id.* at 667-68.

Similarly, in *Domino v. Kentucky Fried Chicken*, the court concluded that the plaintiff failed to state a §1981 claim because the plaintiff did not adequately plead that racial animus was the but-for cause of an alleged contractual impairment. 2020 U.S. Dist. LEXIS 182265, at *2 (N.D. Cal. Oct. 1, 2020). The plaintiff alleged that a defendant-restaurant's employees repeatedly used racial slurs and treated a patron of a different race more favorably under similar circumstances. *Id.* But, the plaintiff also alleged that the defendant's employees identified him as someone who had previously complained about the quality of the restaurant's food and as someone who entered the restaurant on a prior occasion without making a purchase. *Id.* at *1-2. Thus, because the plaintiff alleged that "the employees were also motivated by previous, personal interactions with [the] [p]laintiff," the court dismissed the plaintiff's §1981 claim. *Id.* at *2.

In *Banner Health*, a doctor from the Middle East brought a §1981 lawsuit claiming his Physicians Services Agreement (PSA) with a network of hospitals was revoked on the basis of his race. *Banner Health*, 515 F. Supp. 3d at 1035. The district court dismissed the §1981 claim after determining that the plaintiff's own allegations gave rise to an inference that his alleged contractual

9

impairments were caused by his prior contentious relationships with the other doctors. *Id.* at 1036. "The reasonable inference to be drawn from these allegations is that Defendants were motivated, in part, by their previous encounters with Dr. Sharifi, not his race." *Id.* The allegations, therefore, did not give rise to a plausible inference that racial animus was the but-for cause of Banner's decision to revoke Dr. Sharifi's agreement. *Id.* Thus, because Dr. Sharifi failed to adequately plead that but for his race, he would not have suffered the loss of a legally protected right, the Court found that Dr. Sharifi's § 1981 claims implausible. *Id*.; see *Comcast Corp*., 140 S. Ct. at 1019.

Here, Plaintiff's claim of discrimination is no better, and likewise "does not draw all reasonable inferences from the facts stated." See *Doe v. Colo. Cmty. Coll. Sys.*, 2020 U.S. Dist. LEXIS 161892, *13 (motion to dismiss granted with prejudice where the plaintiffs asserted an unfounded and conclusory charge of discrimination). If anything, reasonable inferences taken from the allegations in Plaintiff's Compliant contradict her claim of discrimination. To start, Plaintiff tellingly omits any discussion of the similarly situated customers (with diverse backgrounds) who were also not transported due to the overbooking, including an African American passenger, Hispanic passengers and Caucasian passengers. Further, of the customers who were allowed to board, but who did not pay for seat assignments, they were traveling in groups, inferring that Frontier may have attempted to keep groups together whenever possible and rebook flights for those who, like Plaintiff, were traveling alone.

Plaintiff cannot demonstrate that race was the but-for cause of her alleged injury. *Comcast Corp.,* 140 S. Ct. at 1014 ("[A] plaintiff must demonstrate that, but for the defendant's unlawful conduct, [the] alleged injury would not have occurred."). If anything, the allegations in the Complaint shows that racial animus was <u>not</u> the reason that Plaintiff was not transported on the subject flight. *Vu Phan v. State Farm Ins. Co.,* Civil Action No. 16-cv-03111-GPG, 2017 U.S.

10

Dist. LEXIS 189172, at *7 (D. Colo. May 25, 2017)("Plaintiff does not allege any facts to suggest that any defendant intended to discriminate against him on the basis of his race. Rather, it appears certain defendants did not do what the plaintiff wanted them to do, thus the plaintiff is assuming it was because of his race, without other indication. These allegations are insufficient to meet the requirements of Rule 8 in setting forth plausible factual allegations supporting a claim of racial discrimination."). Indeed, it is undisputed in this case that Plaintiff was not transported because (1) she elected not to pay for a seat assignment, and (2) there were 10 more people with reservations than there were seats available on the flight. Had Plaintiff purchased a seat assignment, or if the flight had not been overbooked, she would have been transported by the subject flight.

Plaintiff has not proffered enough factual content to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. She merely assumes that the other passengers were permitted to board, and she and nine others were not, because of intentional racial discrimination. This is, of course, belied by her allegations that there were race-neutral reasons the ten (10) customers could not be transported, and that similarly situated passengers were treated the same as Plaintiff. Accordingly, Plaintiff's allegations do not rise to a plausible inference that racial animus was the but-for cause of her not being transported by the subject flight, and her claim should be dismissed with prejudice. *Colo. Cmty. Coll. Sys.*, 2020 U.S. Dist. LEXIS 161892, at *16 ("The chasm is simply too great between the facts pled and the inference Plaintiffs ask this Court to make.").

3. **Plaintiff improperly brings a claim under Australian law**

Plaintiff improperly brings her second count for discrimination under "The Racial Discrimination Act of 1975, as embodied in the Equal Protection Clause, of the 14th Amendment, to the Consitution [*sic*] of the United States of America." *Id*. at 2. However, the Racial

Discrimination Act of 1975 is an Australian law. Act No. 52 of 1975, Racial Discrimination Act 1975 [Australia], 11 June 1975.  Accordingly, it has no bearing on this matter.

## V.  CONCLUSION

For the foregoing reasons, Frontier Airlines, Inc., respectfully requests that this Court enter an Order dismissing the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), and for such further relief as this Court deem just and reasonable.

Respectfully submitted this 3rd day of November, 2023.

/s/  Brian T. Maye

Brian T. Maye
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
Phone: (312) 345-0700
Email: bmaye@hinshawlaw.com

**Attorneys for Defendant,
Frontier Airlines, Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2023, I caused the foregoing to be electronically filed with the United States District Court for the District of Colorado using the CM/ECF system.

/s/  Brian T. Maye