IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01875-GPG-KAS

KUSMIN L. AMARSINGH,

    Plaintiff,

v.

FRONTIER AIRLINES, INC.,

    Defendant.
_____

**AMENDED ORDER AND RECOMMENDATION[1] OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on **Defendant Frontier Airlines, Inc.'s Motion to Dismiss With Prejudice** [#22] (the "Motion to Dismiss"). Plaintiff, an attorney who proceeds in this matter pro se,[2] filed a Response [#24] in opposition to the Motion to Dismiss [#22], and Defendant filed a Reply [#25]. The Motion to Dismiss [#22] has been referred to the undersigned for a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), ~~Fed. R. Civ. P. 72(b)(1),~~ and D.C.COLO.LCivR 72.1(c)(3). *See Memorandum* [#27].

---

[1] This amendment corrects Section IV ("Conclusion") to reflect that the undersigned *recommends* that the Motion to Dismiss [#22] be granted.

[2] Generally, the Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). However, here, Plaintiff specifically alleges that she is "a United States Army JAG Attorney." *Fifth Am. Compl.* [#14], ¶ 20. Because she is an attorney, Plaintiff's filings are not entitled to lenient interpretation. *See, e.g.*, *Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007) ("While we generally construe pro se pleadings liberally, . . . the same courtesy need not be extended to licensed attorneys.") (citing *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001)); *McNamara v. Brauchler*, 570 F. App'x 741, 743 n.2 (10th Cir. 2014) (finding no reason to hold a disbarred attorney "to a less stringent standard than other legally trained individuals"). Plaintiff is not entitled to special license or liberal construction.

Separately, Plaintiff filed a **Request for the Court to Consider Supplemental Evidence** [#28] (the "Motion to Supplement"), asking the Court to consider additional exhibits as it reviews the Motion to Dismiss [#22]. No responses or replies to the Motion to Supplement [#28] were filed.

The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons stated below, the Motion to Supplement [#28] is **DENIED AS MOOT**. Additionally, the Court **RECOMMENDS** that the Motion to Dismiss [#22] be **GRANTED**, and that the Court decline to exercise supplemental jurisdiction over Plaintiff's breach of contract claim (Claim One).

## I. Background

Unless otherwise stated, all facts in this section come from Plaintiff's Fifth Amended Complaint [#14][3] and are accepted as true for purposes of the Motion to Dismiss [#22]. *See, e.g.*, *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014) (stating that on a Rule 12(b)(6) motion the court must accept all well-pled factual allegations in the complaint as true).

On June 13, 2023, Plaintiff arrived at the airport in Philadelphia, to catch a flight to St. Louis with a connection through Orlando. *Fifth Am. Compl.* [#14], ¶ 1. Plaintiff checked

---

[3] There are five items on the docket entitled "Amended Complaint". *See Amended Complaint* [#2]; *Second Amended Complaint* [#8]; *Amended Complaint* [#11]; *Amended Complaint* [#13]; *Amended Complaint* [#14]. The last two were both filed on August 14, 2023, with some differences between them. *Compare Fourth Amended Complaint* [#13] *and Attachments* [#13-1, #13-2], *with Fifth Amended Complaint* [#14]. The Fourth Amended Complaint [#13] was, notably, unsigned, but there were other changes between the two complaints as well. *See Fourth Am. Compl.* [#13] at 3; *Statement of Claims* [#13-1] (containing 17 paragraphs in Facts section); *Fifth Am. Compl.* [#14] at 4-9 (containing 20 paragraphs in Facts section). Nonetheless, because the Fifth Amended Complaint [#14] was the most recently filed, and because Defendant cited to it in its Motion to Dismiss [#22], the Court considers it to be the operative complaint. *See Motion to Dismiss* [#22] at 2 (citing to "Dkt. 14").

into her flight online, arrived at the departure gate "well before the flight departure time," and waited to board. *Id.*, ¶ 3. Three agents of Defendant Frontier ("Frontier"), all of whom appeared (to Plaintiff) to be African American, were at the boarding gate. *Id.*, ¶¶ 3, 5. Frontier's "lead agent, Mr. Tyron or Tyrone, announced that the flight was overbooked by approximately 10 passengers." *Id.* Frontier's agent asked for volunteers to receive a refund and rebook their flight, and later offered an additional $800.00 for volunteers—but no one volunteered. *Id.* Thereafter, the boarding process began by zone number. *Id.*, ¶ 4. Plaintiff's zone was called and she approached the agent, but she had not been assigned a seat and her boarding pass stated, "Seat: TBD." *Id.*

A Frontier agent directed Plaintiff to the back of the line because only passengers with assigned seats were permitted to board. *Id.*, ¶ 5. Plaintiff requested a seat assignment but was told she needed to wait until after the boarding process. *Id.* Plaintiff encountered several other passengers who awaited seat assignments, including a family of 8 to 10 people who appeared (to Plaintiff) to be African American. *Id.* There were six other passengers waiting for seat assignments, who "either were or appeared to be Hispanic, one male passenger, who was or appeared to be White, and a gentleman who was or appeared to part of [sic] African American," as well as "an apparent Asian woman traveling with a child, accompanied by a white female." *Id.*, ¶ 6.

After all the passengers with assigned seats had boarded, Frontier agents approached the waiting passengers. *Id.*, ¶ 7. "The child and the adult Asian female passenger were given seats and allowed to board" and "the party of 8-10 African American passengers" were also allowed to board. *Id.* After the latter group boarded, Frontier's agents returned to the gate counter. *Id.*, ¶ 8. Plaintiff again approached them,

Case No. 1:23-cv-01875-GPG-KAS   Document 33   filed 08/20/24   USDC Colorado   pg 4 of 14

asking about a seat assignment, "hop[ing] to explain and impress upon the agents that [her] flight was a connecting flight, and that there were no alternative/feasible flights for [her] schedule for at least a week." *Id.* One of the three Frontier agents kept interrupting Plaintiff and would not let her speak. *Id.* Plaintiff alleges that "[o]f the passengers left without seats, none were African American, except the possible mixed race [sic] gentleman [she had] mentioned previously." *Id.*, ¶ 9. Plaintiff and the other passengers, which included "approximately 5 Hispanic / Spanish Speaking passengers, two of Indian descent, [Plaintiff] being one, and one white male, were told to have a seat and wait [their] turn." *Id.*

10. The flight departed and the remaining passengers approached the counter. *Id.*, ¶ The "Indian female passenger" went to speak with Frontier's lead agent, who began yelling at her "in what sounded like a mocking Indian accent and while pointing to each passenger in front of him asked her do you think you are more important than her, him, her[.]" *Id.* Frontier's lead agent "kept on speaking in a raised and unprofessional manner" and the other passenger was also told to sit down. *Id.* One of the waiting "male Hispanic passenger[s]" received a meal voucher as, apparently, he had already been bumped from a flight the day before. *Id.*, ¶ 11. A Frontier agent told that man that "tomorrow's flight was similarly overbooked." *Id.*

Eventually, the lead Frontier agent asked all the waiting passengers for their name, email, and phone number to process refunds and compensation, and he stated that they would all receive $400.00 plus the cost of their tickets. *Id.*, ¶ 12. When Plaintiff went to the other Frontier agents, instead of processing everything, they only offered her a refund or to rebook. *Id.* One of the agents was handing out cards "with the link to Frontier's

4

Case No. 1:23-cv-01875-GPG-KAS  Document 33  filed 08/20/24  USDC Colorado  pg 5 of 14

refund." *Id.*, ¶ 13. Plaintiff asked the lead agent for clarification, and he again stated that compensation and a refund would be provided. *Id.*, ¶ 14. After the lead agent left, Plaintiff waited longer and was told that she would receive an email with her refund information. *Id.*, ¶ 15. The following day, Plaintiff booked a flight home with a different airline because there were no Frontier flights to St. Louis for another week. *Id.*, ¶ 16. She incurred unspecified "costs associated with returning home rather than visiting St. Louis" and "lost approximately $1000.00 in flights" and missed the opportunity to attend her grandson's birth announcement and family reunion. *Id.*

Plaintiff later filed two complaints with Frontier and was told that she had already been refunded her flight; however, Plaintiff claims that she has not accepted or received any compensation or money from Frontier. *Id.*, ¶ 17. She also filed a complaint with the Department of Transportation. *Id.*

Plaintiff claims that Defendant, through its agents, racially discriminated against her because she was not African American. *Id.*, ¶¶ 18-20. She asserts that the Frontier agents "had authority to select which passengers to board based on non-discriminatory characteristics." *Id.* She further claims that her flight ticket was a contract whereby Frontier promised to transport her from Philadelphia to St. Louis on the date and time of her ticket, provided she "substantially perform" by checking into the flight. *Id.*, ¶ 19. She asserts that, even though she "did not contract for a specific seat, neither did many other passengers, and, [she] was still entitled to a seat and transport to [her] final destination unless [she] elected for a refund of [her] ticket which [she] did not." *Id.*

Plaintiff's operative complaint raises two causes of action: breach of contract (Claim One) and racial discrimination (Claim Two). *Id.* at 3; *see also Response* [#24] at 1

Case No. 1:23-cv-01875-GPG-KAS   Document 33   filed 08/20/24   USDC Colorado   pg 6 of 14

(identifying claims). Plaintiff asserts federal question jurisdiction exists, pursuant to 28 U.S.C. § 1331, in connection with her racial discrimination claim, and she asserts diversity jurisdiction exists, pursuant to 28 U.S.C. § 1332, in connection with her breach of contract claim. *Fifth Am. Compl.* [#14] at 2. Defendant asks the Court to dismiss both claims under Rule 12(b)(6) because Plaintiff "fails to plead sufficient facts to support either cause of action." *Motion to Dismiss* [#22] at 1.

## II. Standard of Review

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitled to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, [n]or does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice ofAm., Inc. v. NBC Universal,*

*Inc.*, 861 F.3d 1081, 1104–05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

## III. Analysis

### A. Claim Two (Racial Discrimination)

The Court first considers Plaintiff's second claim for racial discrimination in violation of 42 U.S.C. § 1981, over which the Court has federal question jurisdiction.

Plaintiff alleges that Defendant's agents racially discriminated against her because she was not African American. *See, e.g.*, *Fifth Am. Compl.* [#14], ¶¶ 18-19. She asserts that Defendant violated the "Racial Discrimination Act of 1975"[4] and 42 U.S.C. § 1981. Defendant argues that Plaintiff fails to plausibly allege any racial discrimination because Plaintiff does not adequately allege that race was the but for cause of her alleged injury. *See Motion to Dismiss* [#22] at 8-11.

Under 42 U.S.C. § 1981(a), "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" The making and enforcement of contracts includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." ~~42 U.S.C. § 1981(b). These~~ rights "are protected against impairment by nongovernmental

[4] Defendant points out that the Racial Discrimination Act of 1975 is an Australian law, not an American law, and is thus inapplicable; Plaintiff does not dispute this point. *See Motion to Dismiss* [#22] at 11-12; *Response* [#24] at 2 n.2. Accordingly, the Court focuses its analysis on the § 1981 aspect of Plaintiff's claim.

discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). By its terms, Section 1981 creates four protected interests: "(1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and punishments." *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989).

To establish a prima facie case of discrimination under § 1981, Plaintiff must show that: (1) she is a member of a protected class; (2) Defendant intended to discriminate against her on the basis of race; and (3) the discrimination interfered with a protected activity as defined in § 1981. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001). These prima facie elements "are flexible and are not to be applied rigidly"; however, Plaintiff still "must show that [D]efendant intentionally discriminated against her." *Id.* at 1102, 1111.

Here, the Court finds that several of Plaintiff's allegations are not entitled to the presumption of truth because they are entirely conclusory, including her allegations that she was specifically targeted because of her race or ethnicity. *See Fifth Am. Compl.* [#14], ¶¶ 18-20; *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (identifying this kind of allegation as conclusory).

Setting the conclusory allegations aside, Plaintiff's well-pleaded factual allegations show that:

- She purchased a ticket with no assigned seat;

- Defendant's lead agent announced that the flight was overbooked by about 10 people;

- Of the people without seat assignments, eventually two groups without seat assignments were boarded: an Asian woman with a baby, and 8 to 10

Case No. 1:23-cv-01875-GPG-KAS   Document 33   filed 08/20/24   USDC Colorado   pg 9 of 14

- members of an African American family, of whom "most" did not have assigned seating;
- After these two groups were boarded, Plaintiff approached Defendant's agents "to explain and impress upon the agents that [her] flight was a connecting flight, and that there were no other alternative/feasible flights for [her] schedule for at least a week";
- Defendant's agents rudely responded;
- The flight left without her;
- The group of passengers who were not given seats included several Hispanic passengers, a white male, Plaintiff, and another Indian woman;
- Defendant's lead agent yelled at another passenger in "what sounded like a mocking Indian accent" while pointing to each passenger in front of him and asking that other passenger if she thought she was more important than each of them;
- Defendant's agents promised not only refunds but also additional compensation;
- Plaintiff "had to tilt [her] head into [the lead agent's] personal space to hear him";
- Plaintiff never accepted or received a refund from Frontier; and
- Defendant's agents had a passenger log in front of them during boarding, they called out Plaintiff's last name and that of the other woman of Indian descent, and they made a notation on the passenger log before asking them to take a seat.

*Fifth Am. Compl.*, ¶¶ 3-4, 7-10, 12, 14, 17, 19.

Plaintiff plausibly alleges that she is a member of a protected class—a woman of Indian descent. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (stating that, in enacting § 1981, Congress intended to protect "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics"). However, none of the alleged events, even taken as true and viewed in

Case No. 1:23-cv-01875-GPG-KAS Document 33 filed 08/20/24 USDC Colorado pg 10 of 14

the light most favorable to her, suggest racial discrimination. By her own admission, she and other stand-by passengers were told that the flight was overbooked by about 10 people, and while Defendant was able to board some extra passengers, it could not board them all. *Fifth Am. Compl.* [#14], ¶¶ 7, 10. The group left behind was not just Indian women like Plaintiff, but included a white man, a mixed-race man, and several Hispanic people. *Id.*, ¶ 10. The stand-by passengers who were later permitted to board were also racially diverse. *Id.*, ¶ 7. Nothing suggests that Defendant's agents considered race as they allowed some stand-by passengers to board. By Plaintiff's own admission, no matter which combination of passengers had been boarded and no matter which six passengers had been left behind, each group would have been racially diverse.

The Court declines to infer discrimination arising from a boarding gate agent's calling out a standby passenger's last name, writing something on the passenger log, and then asking her to take a seat. *See Fifth Am. Compl.* [#14], ¶ 19. Even if Defendant's gate agents were unprofessional or rude to Plaintiff and other passengers, that does not demonstrate an intent to discriminate *based on her race*. *See, e.g.*, *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (stating that the defendant's agent "could be unconscionably rude and unfair to [the plaintiff] without violating Title VII").

In sum, Plaintiff fails to plausibly allege intentional or purposeful racial discrimination and, therefore, Claim Two (racial discrimination) should be dismissed for failure to state a claim. *Vu Phan v. State Farm Ins. Co*, No. 17-cv-03073-GPG, 2018 WL 10425417, at *5 (D. Colo. July 30, 2018). Accordingly, the Court **recommends** that Claim Two (racial discrimination) be **dismissed without prejudice**. *See, e.g.*, *id.* (dismissing without prejudice pro se plaintiff's implausibly pleaded § 1981 claims).

### B.     Claim One (Breach of Contract)

The Court next considers Plaintiff's first claim for breach of contract, over which she asserts diversity jurisdiction exists.

Pursuant to 28 U.S.C. § 1332, a district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]"

In the Complaint [#14], Plaintiff represents that she is a citizen of Florida, Defendant is incorporated under Colorado laws and, therefore, the parties are citizens of different states. *Fifth Am. Compl.* [#14] at 2. Plaintiff also represents that the "amount in controversy exceeds $75,000." *Id*. However, closer scrutiny of Plaintiff's breach of contract claim reveals that is not so. Specifically, Plaintiff claims that, due to Defendant's contractual breach, she "lost approximately $1000.00 in flights" and "the opportunity to attend [her] grandson[']s birth announcement and family reunion in his honor." *Id*., ¶ 16. To the extent Plaintiff seeks emotional damages, *see id*. at 10 (requesting "emotional distress" damages), those are not recoverable in a breach of contract claim where the breach was not willful and wanton. *See Brossia v. Rick Constr., L.T.D. Liab. Co.*, 81 P.3d 1126, 1131 (Colo. App. 2003). Plaintiff has not alleged willful and wanton conduct. To the extent that Plaintiff represents the amount in controversy exceeds $75,000 because she seeks "[attorney] fees" if she prevails, *see id*., she has not asserted a "right, based on contract, statute, or legal authority, to an award of attorney's fees if [she] prevails in the litigation[.]" *Gerig v. Krause Publ'ns, Inc.*, 58 F. Supp. 2d 1261, 1264 (D. Kan. 1999) (internal quotation marks and citations omitted). Therefore, any anticipated fee award may not be included in determining whether the jurisdictional minimum is met. *See Plus*

Case No. 1:23-cv-01875-GPG-KAS   Document 33   filed 08/20/24   USDC Colorado   pg 12 of 14

*Sys. Inc. v. New England Network, Inc.*, 804 F. Supp. 111, 116-17 (D. Colo. 1992) (noting well established principle "that attorneys' fees may be included in the amount in controversy for purposes of satisfying the jurisdictional requirement where such fees are provided by statute or contract.") (collecting authorities). That leaves "approximately $1000.00 in flights" as the amount in controversy. Because $1,000 falls well short of the $75,000 jurisdictional threshold, diversity jurisdiction does not exist.

Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" *See also Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (stating, "[once] the bases for federal subject matter jurisdiction have been extinguished . . ., the district court may decline to exercise continuing . . . supplemental jurisdiction over [the] plaintiff's state claims"). Because the Court has recommended dismissal of Plaintiff's 42 U.S.C. § 1981 racial discrimination claim, the Court **further recommends** that the District Judge decline to exercise supplemental jurisdiction over Plaintiff's breach of contract claim (Claim One) and dismiss that claim **without prejudice** pursuant to 28 U.S.C. § 1367(c)(3). *See McDonald v. Sch. Dist. No. 1*, 83 F. Supp. 3d 1134, 1153-54 (D. Colo. 2015) ("Finding no compelling reason to retain jurisdiction, the Court will dismiss plaintiff's remaining claims without prejudice"). Because of the recommendation to dismiss the breach of contract claim without prejudice, the Court **denies as moot** Plaintiff's Request for the Court to Consider Supplemental Evidence [#28].

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion to Dismiss [#22] be **GRANTED** and the Complaint [#14] be **DISMISSED WITHOUT PREJUDICE**.

IT IS **ORDERED** that Plaintiff's Request for the Court to Consider Supplemental Evidence [#28] is **DENIED AS MOOT**.

IT IS FURTHER **ORDERED** that any party may file objections Recommendation **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: August 20, 2024                              BY THE COURT:

Case No. 1:23-cv-01875-GPG-KAS  Document 33  filed 08/20/24  USDC Colorado  pg 14 of 14

Kathryn A. Starnella

United States Magistrate Judge