IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 23-cv-01875-GPG-KAS

KUSMIN L. AMARSINGH,

    Plaintiff,

v.

FRONTIER AIRLINES, INC.,

    Defendant.

## ORDER

    Before the Court is Plaintiff Kusmin L. Amarsingh's Plaintiff Objections to Magistrate Amended Order and Recommendation (D. 33) regarding the Amended Order and Recommendation of United States Magistrate Judge (Recommendation) (D. 44) by U.S. Magistrate Judge Kathryn A. Starnella. Judge Starnella recommended that Defendant Frontier Airlines Inc.'s Motion to Dismiss with Prejudice (Motion) (D. 22) be granted for failure to state a claim and by denying supplemental jurisdiction over the state law breach of contract claim. Judge Starnella also denied Plaintiff's Request for Court to Consider Supplemental Evidence (Supplement) (D. 28) as moot in light of the recommended dismissal. For the reasons set forth below, the Court ADOPTS the Recommendation, OVERRULES Plaintiff's Objection, and GRANTS in part and DENIES in part the Motion.[1]

---

[1] The Motion's requested dismissal with prejudice, but the Recommendation recommends dismissal without prejudice (D. 33 at 13). Neither party objected to dismissal being without prejudice. This "in part" disposition merely reflects that the Court does not grant all relief sought.

1

## I.  BACKGROUND

On June 13, 2023, Mrs. Amarsingh had a terrible experience at the airport in Philadelphia with Defendant Frontier Airlines, Inc. (Frontier) (D. 14 at ¶ 1).[2]  She did her part.  Mrs. Amarsingh checked into her flight online, arrived at the departure gate "well before the flight departure time," and waited to board (*id*. at ¶ 3). Three Frontier agents, who appeared (to Plaintiff) to be African American, were at the boarding gate (*id*., ¶¶ 3, 5).  Frontier's "lead agent, Mr. Tyron or Tyrone," announced that the flight was overbooked by approximately 10 passengers" (*id*. at ¶ 3).  Frontier's agent asked for volunteers to receive a refund and rebook their flight, and later offered an additional $800.00 for volunteers—but no one volunteered (*id*.).  Thereafter, the boarding process began by zone number (*id*. at ¶ 4).

Mrs. Amarsingh's zone was called, and she approached the gate agent (*id*. at ¶ 4).  But she had not been assigned a seat, and her boarding pass stated, "Seat: TBD" (*id*.).  The agent told Mrs. Amarsingh that they were only boarding passengers with an assigned seat (*id*. at ¶ 5).  Mrs. Amarsingh requested a seat assignment but was told that she needed to wait until after boarding (*id*.).

Mrs. Amarsingh is a United States Citizen, Army JAG Attorney[3], and "proud veteran" (D. 14 at ¶ 20).  She is also "clearly of Indian descent, and, [her] name on the passenger log, last name 'Amarsingh' is also telling [of her] descent" (*id*. at ¶ 19).  She waited with several other passengers awaiting seat assignments (id.at ¶ 5).  Based on their appearance, Mrs. Amarsingh alleges that the

---

[2] The Court draws the operative facts from the operative Complaint (Complaint) (D. 14), which is the fifth complaint filed in this case, unless otherwise indicated.

[3] She is proceeding *pro se* in this action.

2

others waiting assignments included a family of 8 to 10 African Americans, most of whom did not have assigned seats (*id*.). She alleges that remaining waiting passengers were six Hispanics; one White male; one African American male;[4] another woman of Indian descent; and a group including an Asian woman, a child, and a White woman (*id*. at ¶¶ 6, 9).

"After all passengers with seat assignments boarded, the Frontier agent asked the party of three, with the child passenger, if one of the adults would give up their seat" (D. 14 at ¶ 7). "The child and the adult Asian female passenger were given seats and allowed to board" (*id*.). "Next, the lead Frontier Agent, Tyron(e) came out from behind the Frontier Counter and approached the party of 8–10 African American passengers and ushered them on board" (*id*.). Ms. Amarsingh alleges that the African American agents' decisions about who to seat on the plane were based on race and discriminatory against non-African Americans (*id*. at ¶ 19).

After these passengers had also boarded, Mrs. Amarsingh approached the agents at the counter to inquire about a seat assignment and explain the issues related to her travel plans (D. 14 at ¶ 8). She had traveled to Philadelphia to "attend a funeral of a close family friend[] and loved one" (*id*. at ¶ 1). She was traveling to St. Louis to "reunite with [her] minor daughter who was missing [her] tremendously, [her] husband, and[ her] recently born Grandson, Jonah[,] who [she] had yet to meet" (*id*. at ¶ 2). Mrs. Amarsingh was connecting through Orlando, and "there were no other alternative / feasible flights for [her] schedule for at least a week" (*id*. at ¶ 8). There were, however, several other flights to Florida that could have accommodated other passengers without connections (D. 28-1). A female agent "kept interrupting" Mrs. Amarsingh by saying "'have as

---

[4] Ms. Amarsingh alleges that this individual may have been "part of [sic] African American" or "possible [sic] mixed race" (D. 14 at ¶¶ 6, 9).

3

seat'" "about 25 times" before switching to repeating "'I can hear you'" in a "rude and very unprofessional manner" (D. 14 at ¶ 8).

The putative passengers continued to wait without updates until the monitor updated to show that the flight had departed, 30 minutes after it had actually departed (D. 14 at ¶ 10). Now realizing that they had been bumped from the flight, the disappointed passengers approached the counter, but the agents "became irate and told everyone to sit down in a very loud voice" (*id.*). The other passenger of Indian descent, who had an international connection, approached the counter to speak with the lead agent, who "began yelling at her in what sounded like a mocking Indian accent and while pointing to each passenger in front of him asked her do you think you are more important than her, him, her . . . etc." (*id.*).

Various and sundry indignities followed in Mrs. Amarsingh's interactions with Frontier, but she does not suggest that they had racial overtones (D. 14 at ¶¶ 10–17). She never got a refund or other compensation from Frontier (*id.* at ¶ 17). The following day, Plaintiff booked a flight home to Florida with a different airline rather than attempting to get to St. Louis (*id.* at ¶ 16). She "lost approximately $1000.00 in flights, but more importantly lost the opportunity to attend [her] grandson's birth announcement and family reunion in his honor" (*id.*). Mrs. Amarsingh seeks up to "$100 million dollars for fees, expenses, and[] emotional distress caused by Frontier" (*id.* at 10, ¶ 2).

Plaintiff's Complaint raises two causes of action: breach of contract (Claim One) and racial discrimination (Claim Two) (D. 14 at 3; D. 24 at 16 (identifying claims)). Plaintiff asserts the Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over her racial discrimination claim, and she asserts diversity jurisdiction, pursuant to 28 U.S.C. § 1332, over her breach of

4

contract claim (D. 14 at 2). Defendant asks the Court to dismiss both claims under Rule 12(b)(6) because Plaintiff "fails to plead sufficient facts to support either cause of action" (D. 22 at 1).

### III. LEGAL STANDARDS

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to." An objection to a recommendation is properly made if it is both timely and specific. *United States v. 2121 East 30th St.*, 73 F.3d 1057, 1059–60 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* at 1059. In conducting its review, "[t]he district judge may accept, reject, or modify the [recommendation]; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Additionally, the complaint must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed; however, a complaint may be dismissed because it asserts a legal theory not cognizable as a matter of law. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007); *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004). A claim is not plausible on its face "if [the allegations] are so general that they encompass

5

a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge[ the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). In assessing a claim's plausibility, legal conclusions contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotations and citation omitted).

## IV. ANALYSIS

Mrs. Amarsingh's Objection raises several issues with the Recommendation that fall into three categories: (1) factual issues with the Recommendation's discussion of the allegations and evidence, (2) issues with its analysis of the racial discrimination claim, and (3) a dispute over the amount in controversy.

### A. The Court Has Considered the Additional Allegations and Evidence that Mrs. Amarsingh Highlights in Her Objection.

In her Objection, Mrs. Amarsingh notes a number of allegations and supplemental evidence that she contends are not properly reflected in the Recommendation. The Court will consider this evidence.

First, Mrs. Amarsingh notes that the Recommendation did "not mention or refer to" the other "direct flight leaving the same gate less than 30 minutes direct to Orlando that could accommodate the African American passengers and that the next available flight for Plaintiff was a week later" (D. 35 at 6). She also notes her Supplement contained evidence of additional flights

6

to Orlando the same date, some leaving from the same gate (*id*. at 7).  Generally, it would be inappropriate for the Court to consider matters outside the pleadings in relation to a motion under Rule 12(b)(6).  *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  However, the flight schedule is referenced in the Complaint as supporting her claim and Frontier neither disputes its authenticity nor objects to its consideration.  *Id*. (allowing consideration of matters outside the pleadings without converting a motion to dismiss into a motion for summary judgment if the document is (1) referred to in the complaint, (2) central to the plaintiff's claim, and (3) the parties do not dispute its authenticity).  The Court will consider the travel schedule (D. 28-1) in its review of the Objection and has included it in the discussion below.  *See* Fed. R. Civ. P. 72(b)(3).

Second, Mrs. Amarsingh notes that her allegations include her speaking with Frontier's agents about her situation before they selected additional passengers for boarding (D. 35 at 10). The Court has included this context in the background and will specifically consider it.

Third, Mrs. Amarsingh notes that the Recommendation "failed to state the complete reasons for Plaintiff's travel" because it omitted that she was in Philadelphia for a funeral of a loved one (D. 35 at 11).  She acknowledges that "this fact does not have any bearing on the Defendant's discriminatory intent," she asserts that it is important context and potentially related to her "emotional damages" (*id*.).  The Court has included Mrs. Amarsingh's reasons for travel in the background and will specifically consider them.

### B. The Additional Allegations and Evidence Do Not Change the Ultimate Conclusion on the Racial Discrimination Claim.

To establish a prima facie case of discrimination under 42 U.S.C. § 1981, a plaintiff must show that: (1) she is a member of a protected class; (2) the defendant intended to discriminate against her on the basis of race; and (3) the discrimination interfered with a protected activity as

defined in § 1981.  *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001).  These prima facie elements "are flexible and are not to be applied rigidly"; however, Plaintiff still "must show that [D]efendant intentionally discriminated against her." *Id*. at 1102, 1111.  In § 1981 cases, "a plaintiff bears the burden of showing that race was a but-for cause of its injury." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020).

Judge Starnella found that Mrs. Amarsingh had sufficiently pled the first element by alleging that she was a member of a protected, namely, a woman of Indian descent (D. 33 at 9).  The Court assumes without deciding that travel on a common carrier such as Frontier pursuant to a contract of carriage is a protected activity under the third element.  *See Hampton*, 247 F.3d at 1104 (holding a retail transaction could constitute a contract for the purpose of § 1981).  Thus, the Court is left with only the issue of whether Mrs. Amarsingh has sufficiently alleged intentional racial discrimination.

Mrs. Amarsingh argues that the Recommendation incorrectly considered whether the passengers selected were "diverse" rather than whether she was discriminated against as a non-African American (D. 35 at 4–5).  She also argues that her allegations show that Frontier did not rely on objective factors in determining who to seat and instead relied on race (*id*. at 8–9).  According to her, such objective factors "typically include considerations such as the severity of hardship that would be caused by denying boarding to certain passengers, such as those who are physically handicapped or unaccompanied minors, and the fare class of the ticket purchased" (*id*. aty 12).  In Mrs. Amarsingh's view, the allegations "demonstrated that if she were African American, she would have been boarded," thereby satisfying the but-for test of discrimination (*id*. at 11).  Mrs. Amarsingh strenuously argues that, when her allegations are viewed in the light most

8

favorable to her, it is reasonable to infer that Frontier's agents were motivated by racial animus such that it was a deciding factor and it is unreasonable to infer that there was a race-neutral basis for Frontier's actions (D. 35 at 2–3, 6–9, 12–15). In her view, "Frontier used race as the deciding factor" (*id*. at 12).

There are, no doubt, allegations supporting an inference of racial discrimination, including the Frontier agents treating the non-African Americans[5] so badly, such as by speaking to the other woman of Indian descent "like the character 'Apu' from the Simpsons" (D. 35 at 9). But there are two glaring issues with Mrs. Amarsingh's argument that she does not address: (1) some of the African American passengers traveling in the group already had assigned seats and (2) the other African American man was bumped.

Mrs. Amarsingh acknowledges that the severity of hardship that would be caused by denying boarding to certain passengers is a race-neutral basis for determining who to allow to board the plane. If a group of people is traveling together, it would certainly be a hardship to split them up and force them to travel separately. Mrs. Amarsingh's alleges that some people in the group of African American passengers already had assigned seats and, therefore, were free to board the plane. In order not to split the group and cause them the hardship of traveling separately, Frontier had to give the others assigned seats or take away the assigned seats of passengers who already had them. Nowhere does Mrs. Amarsingh suggest that Frontier could or should take away already assigned seats on an overbooked flight. Regardless, that too would be a hardship. Thus,

---

[5] The bumped African American man spoke with the gate agents and left after letting Mrs. Amarsingh use his phone, before the worst of the yelling started (D. 14 at ¶ 9).

9

Mrs. Amarsingh's allegations show that there was a race-neutral basis dependent on hardship that could support Frontier's actions.

Frontier's agents also boarded two passengers that were not African American—the Asian woman and child.[6] In doing so, they left an African American man behind. If the agents were motivated by racial discrimination in favor of African Americans, this action would have been contrary to their motivation. Indeed, this is fatal to Mrs. Amarsingh's argument that, if she were African American, she would have been allowed to board. He was African American and was not allowed to board. Instead, they allowed two non-African American passengers traveling together to remain together, albeit by one from their alleged group voluntarily agreeing to remain behind. If race were truly the deciding factor, Frontier's agents would have seated the African American. Instead, they bumped him.

Thus, Mrs. Amarsingh's argument that it is unreasonable to infer that Frontier had a non-discriminatory reason for its actions and argument that Frontier did not use any permissible criteria for seating passengers on the overbooked flight is belied by her own allegations. *See Takieh v. Banner Health*, 515 F. Supp. 3d 1026, 1036 (D. Ariz. 2021), *aff'd*, No. 21-15326, 2022 WL 474170 (9th Cir. Feb. 16, 2022) (dismissing complaint for failure to state racial discrimination claim where the "reasonable inference to be drawn from these allegations is that Defendants were motivated, in part, by their previous encounters with Dr. Sharifi, not his race"). The allegations in the

---

[6] Mrs. Amarsingh notes that, "[i]n this instance, the Defendant did exercise a non-race-based determination because there was an unaccompanied minor," and argues that it was therefore not relevant (D. 35). This argument is based in an apparent misunderstanding. An "unaccompanied minor" is a young child traveling without a legal guardian or adult. *See, e.g., When Kids Fly Alone*, U.S. Dept. of Transportation, https://www.transportation.gov/sites/dot.gov/files/docs/Kids_Fly_Alone.pdf. The specific age categories vary by airline. *Id*.

10

Complaint show that the flight was overbooked, and it is plain from the alleged circumstances that there were legitimate permissible criteria for the selection of passengers allowed to board. Frontier's agents kept groups together to the extent possible and, in doing so, left an African American off the plane contrary to Mrs. Amarsingh's assertion that race was the deciding factor.

Implicit in Mrs. Amarsingh's argument is an assumption based on the facts available to her that her reasons for being on the plane were more compelling than those of the passengers allowed to board. For example, her insistence that the group of African American passengers could have taken a later flight is, in effect if not explicitly, an argument that it would be less of a hardship for them to be left off the plane that it was for her. Perhaps this is true, but none of the authority that Mrs. Amarsingh cites establishes that an airline must take the *most* hard-up passengers or use any particular criteria. *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 294 (1976) (discussing regulations requiring "each airline to establish priority rules for boarding passengers" to determine who is bumped from overbooked flights). Under binding precedent that this Court must follow, any criteria that is not but-for discrimination based on race is sufficient to avoid § 1981 liability. *Comcast Corp.,* 589 U.S. at 333.

With this context, the fact that she spoke with the agents about her situation before the additional boarders were selected has relevance only to whether the agents were aware of the potential hardship to her. Consistent with the allegations, the Court has assumed the agents knew. Yet, even if they knew of her substantial hardship, it does not follow that they did not use any legitimate criteria for choosing among the passengers without seat assignments. Most importantly, because Frontier's agents bumped an African American passenger, they *cannot* have used the racial criteria that Mrs. Amarsingh asserts that they used. What Mrs. Amarsingh alleges happened

11

is absolutely awful nonetheless, but her allegations are not sufficient to support a § 1981 racial discrimination claim under governing precedents. Accordingly, the Court will dismiss Mrs. Amarsingh's second claim for racial discrimination.

### C. The Court Will Also Dismiss the Breach of Contract Claim.

Judge Starnella found that Mrs. Amarsingh had failed to allege sufficient damages to support diversity jurisdiction over her contract claim because emotional damages are not available for such claims in the absence of allegations of willful and wanton breach (D. 33 at 11 (citing *Brossia v. Rick Constr., L.T.D. Liab. Co.*, 81 P.3d 1126, 1131 (Colo. App. 2003)). This limitation applies to the additional emotional impact related to Mrs. Amarsingh traveling for a funeral such that it does not affect the amount in controversy.

Mrs. Amarsingh alleges that she intends to join all known parties to meet the $75,000.00 minimum amount in controversy for diversity jurisdiction and "respectfully requests that the Court grant supplemental jurisdiction or view the Contract Claim as based on federal question jurisdiction" (D. 35 at 14).

Mrs. Amarsingh's intention to join the other bumped passengers does not provide a non-speculative basis to find potential diversity jurisdiction. There is no reason to believe that these passengers would agree to join as plaintiffs.[7] Further, Frontier is a Colorado airline and, if any of the bumped passengers are citizens of Colorado, it would destroy the complete diversity necessary for jurisdiction. *See* 28 U.S.C. § 1332. The Court cannot "view" the contract claim as a federal claim without a federal question. *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003)

---

[7] In particular, there is no reason to believe the bumped African American man would join claims that he was discriminated against based on race.

(discussing exceptions to the well-pleaded complaint rule). The circumstances under which the Court should exercise supplemental jurisdiction in the absence of a federal question are extremely limited, and such circumstances are not present here. *See Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998). Under 28 U.S.C. § 1367(c)(3), when all the "federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Id*. Accordingly, the Court will also dismiss Mrs. Amarsingh's first claim for breach of contract.

## V.  CONCLUSION

Accordingly, this Court ADOPTS Judge Starnella's Recommendation (D. 33) and OVERRULES Plaintiff's Objection consistent with the above analysis. It is ORDERED that Defendant Frontier Airlines Inc.'s Motion to Dismiss with Prejudice (D. 22) is GRANTED in part and DENIED in part. It is FURTHER ORDERED that all claims are DISMISSED without prejudice. It is FURTHER ORDERED that the Clerk of the Court shall close this case.

DATED September 24, 2024.

BY THE COURT:

Gordon P. Gallagher
United States District Judge